# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08CV915RWS |
| | ) | |
| ERIC SHINSEKI, Secretary, | ) | |
| Department of Veterans' Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Victoria Belton filed this lawsuit against her former employer, Defendant Eric Shinseki, Secretary, Department of Veterans' Affairs ("the VA") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Belton claims that the VA discriminated against her on the basis of race, gender and religion when she worked as a nurse at the Veterans' Affairs Medical Center in St. Louis,

The VA now moves for summary judgment. For the reasons stated below, I will deny summary judgment on all of Belton's claims.

## *Background*

Victoria Belton, an African-American woman who practices the Pentecostal religion, worked at the VA Medical Center as a Registered Nurse in the Operating

Room for several years. Sandra Sides, another African-American woman, was Belton's supervisor.

Nora Lambert, a white female nurse, testified that she witnessed Sides scold Belton for things that were actually Lambert's responsibility. Belton testified that Sides was abusive towards her and others, used racial slurs, and treated black female employees differently than other employees. Belton explained that Sides referred to another African-American female employee as a "kitchen bitch," but in her opinion Sides would not call a white male or a white female employee a "kitchen bitch." Belton testified that at lunch breaks, Sides would order Belton to stop eating, but continue to allow the "white girls" to eat. Belton also testified that Sides frequently called Belton a "raisin nut," "raisinet" and "crack head." Belton explained that "raisin nut" meant "little black people." Belton testified that on one occasion, Sides pulled Belton's hair. Belton also testified that when she talked about God to Sides, Sides would become angry. Belton testified that once, Sides pointed her finger at Belton angrily and said, "God ain't told you nothing." Belton stated that other employees teased Belton about her religious beliefs by referring to her by the name of a famous gospel singer.

Belton testified that the management at the VA knew of Sides' abusive behavior, but nothing to stop it. There is evidence that the VA treated Belton differently than Joseph Mazzola, a white male employee, who complained about Sides' behavior in 2003. Mazzola testified that he requested a transfer from the operating room because of Sides' behavior and was transferred two days later.

On June 16, 2006, Belton suffered a nervous breakdown at work. Belton testified that her breakdown was a result of Sides' abuse and race, religious and gender harassment. After Belton's breakdown, Belton left work and did not return until August 15, 2006. Belton testified that the last time she was paid for work at the VA was June 16, 2006.

The VA termed Belton's absence "Absent without leave," or "AWOL." Belton testified that she did not believe her race or gender played a significant part in the VA's decision to deem her leave "AWOL." Upon Belton's return, Belton testified that she requested that she not be reassigned to the Operating Room and presented a doctor's note clearing her to work, but under some restrictions. The VA did not immediately assign Belton to another station. Instead, Belton testified, Catherine Miller,[1] a supervisor, initially told her she must return to Operating

---

[1] In Belton's responses to Defendant's requests for admissions, Belton refers to Miller as "Catherine Miller." In her affidavit dated June 26, 2009, Belton refers to Miller as "Cathy Miller." In her affidavit dated March 6, 2007, Belton refers to Miller as "Kathy Miller."

Room because that is where her "tour of duty" was. Belton also testified that when she did report to work, Miller specifically requested that she not return to the Operating Room.

Belton testified that she contacted the VA several times between August 16, 2006 and September 11, 2006 regarding her employment and was told there were no positions available for her. At some point in September, 2006, Belton began to work at another job. On September 11, 2006, Michelle Brown met with Belton and advised her that she was reassigned from the operating room to another area effective September 21, 2006. Belton replied that she has taken another job and could not return to work until October 1, 2006. The VA would not wait for Belton. Belton then resigned her position effective September 27, 2006.

***Legal Standard***

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v.

Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998). When a genuine issue of material fact exists, summary judgment should not be granted.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004). Summary judgment should seldom be granted in employment discrimination cases. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

*Discussion*

Belton alleges that her supervisor, Sides, discriminated against her on the basis of race, gender and religion in violation of Title VII in that Belton was subjected to a hostile work environment. Title VII prohibits employers from

discriminating "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

To establish a Title VII hostile work environment claim, the plaintiff must show (1) she is a member of a protected group, (2) she is subjected to unwelcome harassment, (3) the harassment was because on her membership in the protected group, and (4) the harassment affected a term, condition, or privilege of her employment. Carpenter v. Con-Way Central Express, Inc., 481 F.3d 611, 617–18 (8th Cir. 2007). A hostile work environment is one that "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Id. at 618. The conduct must not merely be rude or unpleasant. Id.

The VA offers less than one page of argument in which it claims that it is entitled to judgment as a matter of law because (1) Belton did not experience an adverse employment action because she quit her job to take a more lucrative position; (2) none of the allegations in Belton's complaint are sufficient to assert a claim of religious discrimination; (3) Belton could not have experienced race discrimination because Sides was also of the same race; (4) Belton did not

experience sex discrimination because the circumstances do not support a finding of same sex discrimination; (5) the term "raisonhead"[2] does not relate to Belton's race, sex, or religion; and (6) Belton "acknowledges" that she has no damages.

In her response, Belton points out that she did not quit her job until after six weeks of waiting to be reinstated to her position at the VA and discrimination within the same race is actionable under Title VII. Belton does not acknowledge having "no damages." Belton does not address the VA's claims relating to religion or same sex discrimination.

*(1) Belton did not experience an adverse employment action because she quit her job to take a more lucrative position.*

In its memorandum in support of its motion for summary judgment, the VA relies on the McDonnell Douglas burden shifting framework regarding claims of disparate treatment under Title VII. In its reply memorandum, the VA cites several cases regarding the requirements for a retaliation claim under Title VII. Because the adverse employment action is an element of a retaliation or disparate

---

[2] Neither the VA nor Belton have identified portions of depositions or affidavits stating that Sides called Belton a "raisinhead." The VA did, however, attach Belton's affidavits contained in the Report of Investigation (ROI) from March, 2007, in which Belton testified that Sides called her a "raisin nut" and a "raisinet."

treatment discrimination claim and Belton alleges a hostile work environment, the VA's position is less than coherent.

In any event, the gist of the VA's argument appears to be that Belton quit her employment at the VA to take a more lucrative position thereby making it impossible for the VA to have taken an adverse employment action against her. Belton has presented evidence that she attempted to return to her job at the VA on August 15, 2006, but was not permitted to do so. Belton also presented evidence that she did not take another position until September 2006. Other evidence was presented that Belton contacted the VA on several occasions between August 16, 2006 and September 11, 2006, but was always told there were no positions available. Belton also presented evidence that she did not receive any salary from the VA from June 16, 2006 until the present. Viewing this evidence in the light most favorable to Belton, a reasonable fact finder could infer that Belton had already suffered an adverse employment action before she submitted her "resignation."

*(2) None of the allegations in Belton's complaint are sufficient to assert a claim of religious discrimination.*

The VA argues that it should be granted judgment as a matter of law because none of the allegations in Belton's complaint are sufficient to assert a

claim of religious discrimination. The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The VA offers *no* authority and *no* argument in support of summary judgment on Belton's religion claims. Absent any argument, other than a conclusory statement that Belton's allegations are insufficient to assert a claim of religious discrimination, I will not grant summary judgment on Belton's religion claims.

*(3) Belton could not have experienced race discrimination because Sides was also of the same race.*

The VA argues that Sides could not have subjected Belton to discrimination on account of her race because both Sides and Belton are African American. Belton counters that racial discrimination can exist within the same race and cites Williams v. Wendler, 530 F.3d 584 (7th Cir. 2008) and St. Francis College v. Al-Kharaji, 481 U.S. 604 (1987). In response, the VA claims discusses cases of same-sex harassment, not same-race discrimination. "There can, it is true, be 'racial' discrimination within the same race, broadly defined, because 'race' is a fuzzy term. . . ." Williams, 530 F.3d at 587. As a result, the VA's argument that

Belton could not have experienced racial discrimination because her supervisor is also African-American is wrong as a matter of law, requiring me to deny the VA's motion for judgment as a matter of law.

*(4) Belton did not experience sex discrimination because same the circumstances do not support a finding of same sex discrimination.*

The VA also argues that Sides could not have harassed Belton on account of sex because both Sides and Belton are women. In its memorandum in support of its motion, the VA again only offers a conclusory allegation. However, in its reply memorandum, the VA describes Oncale v. Sundowner Offshores Services, Inc., 523 U.S. 75 (1998) and its progeny. But the VA does not apply the facts of Belton's case to the law or identify the portions of the record upon which it relies. Instead, the entirety of the VA's "argument" is that Belton's "assertions in her Affidavit attached to her Opposition Memorandum that Ms. Sides yelling [sic] is simply conclusory. It may have been that Nurse Sides, now retired, was a difficult supervisor. But Title VII was not designed to protect employees from difficult supervisors."

Again, I emphasize that the party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which support its motion for summary

judgment. Celotex, 477 U.S. at 323. I have reviewed Belton's attached affidavit and do not find any reference to Sides yelling. Because the VA has not identified the portion of the record upon which it relies, I will deny summary judgment on the basis that the circumstances do not support a finding of same-sex discrimination.

*(5) The term "raisonhead" does not relate to Belton's race, sex, or religion.*

The VA argues that the term "raisonhead" does not relate to Belton's race, sex, or religion. The VA did not identify portions of the record containing the term "raisonhead." The VA did submit the Report of Investigation, however, which contained an affidavit in which Belton testified that Sides frequently called her a "raisin nut" or "raisinet." Belton explained that "raisin nut" meant "little black people." Belton's allegations of hostile work environment based on race are factual matters I cannot decided as a matter of law. There is a genuine issue of material fact whether raisonhead, raisin nut or raisinet as used by the VA supervisor refers to Belton's race.

*(6) Belton acknowledges that she has no damages.*

The VA argues that Belton acknowledges that she does not have any actual damages and attaches Belton's Rule 26 disclosures in support. A review of the attached exhibit reveals that Belton's response stated that her damages were

"undetermined," *not* that she did not have any actual damages. The evidence offered disputes the VA's assertion.

Because the VA's argument that Belton has conceded that she has "no damages" is not supported by the record before me, I will deny the VA's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Eric Shinseki, Secretary, Department of Veterans' Affairs' motion for summary judgment [#16] is **DENIED.**

Dated this 12th Day of August, 2009.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE